IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JIM T. PRICE,                                                   No. CV 07-200-MO

                    Plaintiff,                            OPINION AND ORDER

         v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**MOSMAN, J.,**

      Plaintiff Jim Price filed an application for disability benefits on January 23, 2004.  On

July 18, 2006, the Administrative Law Judge ("ALJ") found him not disabled.  Mr. Price

submitted additional evidence to the Appeals Council; on December 9, 2006, it declined his

request for review.

      In this action, Mr. Price contends the ALJ improperly evaluated his residual functional

capacity ("RFC") by failing to include limitations found in medical and lay testimony.  Because

of the errors in determining his RFC, he also contends it was error for the ALJ to decide he could

PAGE 1 - OPINION AND ORDER

return to his past work as a car salesman.  Finally, Mr. Price argues that the Dictionary of

Occupational Titles ("DOT") description for car salesman is inconsistent with the RFC.  I

conclude there are portions of the RFC not supported by substantial evidence, and

inconsistencies between the DOT and the RFC.  These create the possibility of an erroneous

determination that plaintiff could return to his past work.  For these reasons, I REVERSE and

REMAND this case for further proceedings.

## BACKGROUND

Plaintiff alleges disability beginning March 15, 2002.  The core of his disability centers

on bilateral rotator cuff tears and degenerative disc disease.  He contends the pain from these

physical problems has prevented him from being able to work at any full time employment, and

in particular forced him to quit working as a car salesman.  His testimony in support of this

disability came from a variety of sources, including an examining physician, Dr. Morrell; non-

examining state agency physicians, Drs. Habjan and Eder; his massage therapist, Nicole

Ryckenbush; and plaintiff's own testimony about his pain and limitations.  While plaintiff

introduced other evidence to support his claim, for our purposes he contends the RFC fails to

include limitations found in these sources.

**Dr. Morrell**

_____Dr. David Morrell examined Mr. Price on March 6, 2004.  He noted Mr. Price had a

history of trauma and had been run over by a tractor in the past.  (Admin. R. 188.)  He noted Mr.

Price had not had surgery, did not like doctors, and reported having a high pain tolerance.  (*Id.*)

He reported that Mr. Price does odd jobs to help with the mortgage--about three or four hours at a

time, once per week.  (*Id.*)  After his examination, Dr. Morrell found Mr. Price suffering from

pain in his left shoulder, lower back, and neck. He found reduced range of motion in his cervical

and dorsolumbar spine. (*Id.* at 188-89.) His medical opinion was that Mr. Price suffered from

chronic lumbar and cervical spine pain with associated decreases in his range of motion, pain to

palpitation, and muscle spasms. He noted Mr. Price had no radiculopathy. He also described

bilateral rotator cuff tears and impingement syndrome bilaterally, the left greater than the right.

(*Id.* at 189-91.) Finally, Dr. Morrell concluded:

> Pain or other objective behavior did not limit my examination. The perception
> of pain is in proportion to the objective findings. In fact, the claimant is rather
> stoic and is likely in more pain than he admits to. He has a decreased ability to
> reach objects secondary to the bilateral shoulder symptoms as I have described.
> His ability to hold, grip, and manipulate large and small objects should be
> normal. His ability to rise, stand, and walk is decreased secondary to the lumbar
> pain. The claimant does not require any ambulatory device, but he may benefit
> from one for over long distances or uneven terrain. Based on my physical
> examination, assessment of maximum functional capacity in this claimant is
> light. (*Id.* at 191.)

**The Reviewing Physicians**

_____Dr. Habjan and Dr. Eder are state agency physicians who gave their opinions about Mr.

Price's limitations. Among other things, they agreed Mr. Price was limited to occasional reaching

at or above shoulder level. (*Id.* at 197, 207.)

**The Massage Therapist**

Nicole Ryckenbusch is a Licensed Massage Therapist who has treated Mr. Price for

several years. (*Id.* at 194-215.) She offered her opinion that he had lost some range of motion in

his left shoulder. She also stated "the pain in his left shoulder does not allow him to use it for

more than an hour at a time. Being left handed becomes a real challenge for him to work with his

right hand and brings tension and discomfort in his back." (*Id.* at 215.)

**Mr. Price's Testimony**

Mr. Price testified at his hearing on April 25, 2006.  He offered extensive testimony about his pain symptoms and limitations.  He placed the pain at about twelve on a scale of zero to ten. (*Id*. at 228.)  He described pain throughout his shoulders, back, neck, hip and ankles.  He also described pain radiating across his back and down his left leg.  He was asked why Dr. Morrell noted that Mr. Price did not have radiating pain, to which he suggested that perhaps he had not understood Dr. Morrell's question very well.  (*Id.* at 229.)  He testified he could walk for five to fifteen minutes at a time, after which he had to rest.  He also said he could sit upright in a chair for fifteen to twenty minutes.  (*Id.* at 230.)

Mr. Price also related that he occasionally works in his shop doing odd jobs for friends and family members.  This involved some light welding and auto repair.  He testified that on a good week he could go out to the shop and work for an hour or two, no more than three times a week. (*Id.* at 239.)

Mr. Price testified his pain kept him from being able to perform his past work as a car salesman.  He stated the first one to greet a customer is the one that gets to make that sale, and he just couldn't keep up with the other sales people because of his pain.  He said that being in constant pain made it difficult to talk to people.  (*Id.* at 233.)

The ALJ asked Mr. Price how much he could lift.  He replied that he could lift a gas can with two or three gallons in it, and that on one occasion he helped his thirty-four pound grandson into a chair.  (*Id.* at 238.)

## DISCUSSION

### I. <u>Standards</u>

The initial burden of proof rests on claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ has a duty to assist in developing the record. *Reed v. Massanari,* 270 F.3d 838, 841 (9th Cir. 2001).

The ALJ applied the five-step disability determination process from 20 C.F.R. §§ 404.1520 and 416.920. Mr. Price does not contest steps one through three. Where a decision cannot be made based on medical factors alone, the ALJ must determine the claimant's RFC. Based on the ALJ's RFC analysis in this case, he determined at step four that plaintiff retained the capacity to perform his past relevant work as a car salesman. This finding at step four negated the need to perform step five, which is determining whether plaintiff could engage in any work in significant numbers in the national economy. This court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the district court must uphold it. *Andrews*, 53 F.3d at 1039-40.

## II.  Determining the RFC

The ALJ made the following determination of Mr. Price's RFC:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to:  lift or carry up to 10 pounds frequently and 20 pounds occasionally, sit or stand and walk for up to six hours each in an eight hour day with position changes at will, and the ability to get off of his feet at will; never crawl; never climb ladders or scaffolds; occasionally climb stairs and ramps; occasionally walk on uneven terrain; occasionally stoop, kneel or crouch; and occasionally reach above shoulder level.  (Admin. R. 16.)

### A.  Dr. Morrell

Mr. Price argues that this estimate of his RFC fails to take into account fully the opinion of Dr. Morrell.  Specifically, Dr. Morrell gave his opinion that Mr. Price has "decreased ability to reach objects secondary to the bilateral shoulder symptoms" and that his "ability to rise, stand, and walk is decreased."  *(Id.* at 191.)  Mr. Price contends the RFC calculation fails adequately to take into account the limitations on reaching and does not take into account at all the limitations on his ability to "rise."  The Commissioner responds that the RFC limits Mr. Price to "occasional" reaching, which is consistent with Dr. Morrell's statement that he has a "decreased ability to reach objects," and that the limitations on standing in the RFC necessarily encompass limitations on rising.

The opinions of examining physicians are "entitled to greater weight than the opinion of a nonexamining physician."  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  As with treating physicians, the Commissioner must provide clear and convincing reasons for rejecting such opinions where they are uncontradicted, and specific, legitimate reasons for rejecting contradicted opinions.  *Id.* at 831.  The Commissioner initially argues, in passing, that Dr. Morrell's opinion is contradicted, although it is not clear from the record where or how that is so.

PAGE 6 - OPINION AND ORDER

Ultimately, the Commissioner's argument rests on the proposition that the RFC adequately incorporates, without rejection, the substance of Dr. Morrell's opinion.

At least as to the limitation on reaching, the Commissioner is correct. The RFC limits plaintiff to occasional reaching; Dr. Morrell simply states plaintiff has a decreased ability to reach objects. The RFC sufficiently incorporates the medical opinion. The limitation on rising is a more difficult matter. Dr. Morrell's statement that Mr. Price's "ability to rise, stand, and walk is decreased" is not completely incorporated, word-for-word, into the RFC. While it adequately incorporates a limitation on standing, the RFC nowhere specifically mentions any limitation on rising. Contrary to the Commissioner's assertion, it is not obvious that a decreased ability to rise is incorporated into a decreased ability to stand. But read as a whole, the RFC does sufficiently take into account limitations on rising. It notes limits, for example, on Mr. Price's ability to stoop, kneel, or crouch, each of which ultimately involves rising. And a limitation on standing does at least indirectly deal with a decreased ability to rise. It is also important that Dr. Morrell was not specific about what sort of limitations on rising might flow from his opinion; he merely noted decreased ability to rise. For these reasons, I find the RFC sufficiently takes into account each of the challenged aspects of Dr. Morrell's opinion.

### B. The Reviewing Physicians

Dr. Habjan and Dr. Eder each checked forms noting plaintiff was limited to occasional reaching "at or above" shoulder level. Yet the RFC only limits plaintiff to occasional reaching "above" shoulder level, and includes no limitation on reaching "at" shoulder level. Of course, the finding of reviewing physicians, while not given the weight of examining or treating physicians, must be treated as expert opinion evidence. Further, the ALJ must explain the weight given to

such opinions.  Here, at least technically speaking, the ALJ did not explain his silence with regard to any limitation on reaching at shoulder level.

But not every failure to incorporate the words of a reviewing physician into the RFC, even if error, requires reversal.  The difference between "at" and "above" shoulder level is a matter of a single degree.  It would have been inconsequential to the ALJ's nondisability determination to add in the extra degree of limitation.  Here, for example, the tasks (such as test driving) that Mr. Price contends require reaching "at" shoulder level invariably also require reaching "above" shoulder level.  Any error in failing to incorporate the word "at" in the RFC was harmless.  *See Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### C.  <u>The Massage Therapist</u>

As to the testimony of Ms. Ryckenbusch, the ALJ reasoned that she "is not an acceptable medical source.  I afford no weight to this evidence." (Admin. R. 18.)  But Ms. Ryckenbusch testified as a lay witness, not a medical expert.  As Mr. Price's longtime massage therapist, she was in a position to observe his symptoms and offer testimony to substantiate relevant medical opinions.  To discount the testimony of a lay witness, the ALJ "must give reasons that are germane to the each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  It was not germane to Ms. Ryckenbusch's testimony to observe that she was not an acceptable medical source; she was not offered as such.

The Commissioner apparently concedes that Ms. Ryckenbusch's testimony cannot be disregarded merely for the reason stated.  Instead, he suggests that the ALJ, elsewhere in the decision, noted the opinions of Drs. Morrell, Habjen and Eder do not support a limitation as great as Ms. Ryckenbusch suggests.  But nowhere does the ALJ compare the medical testimony to Ms.

Ryckenbusch; nowhere does he state that the difference between her testimony and that of the doctors is the reason he is rejecting her testimony.

It is possible, of course, that the ALJ meant something slightly different than he said. A casual reading of Ms. Ryckenbusch's opinion leaves one with the impression that her testimony is not only inconsistent with the doctors, but beyond the normal limits of her observations of Mr. Price. But it is not for this court, on review, to speculate what the ALJ may have meant by a comment that was otherwise not germane to the witness. *Ceguerra v. Sec'y of HHS*, 933 F.2d 735 (9th Cir. 1991). The reason actually given for rejecting this testimony was error.

**D.  Plaintiff's Credibility**

Where, as here, a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to result in some pain, the ALJ can reject the claimant's testimony about the severity of the pain only by offering "specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Those reasons must be supported by substantial evidence in the record. *Id.* The ALJ plainly discounted, to some degree, Mr. Price's own testimony about his symptoms. He stated: "After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Admin. R. 17.) The ALJ relied on medical evidence contradicting Mr. Price's statements, the lack of medical treatment for some of the symptoms, and Mr. Price's description of his regular activities in reaching his conclusion.

Mr. Price contends, first of all, that the ALJ relied on the wrong legal standard. He

focuses on a statement made at the end of the ALJ's analysis of symptoms, that he was "not persuaded that the claimant is incapable of performing all work." (*Id*. at 18.)  From this, he derives the argument that the ALJ incorrectly put on Mr. Price the burden of showing he cannot perform all work.  But this inverts what the ALJ was saying.  Mr. Price had testified about his own limitations, and did so in a way that, if believed, would prevent him from all regular employment. The ALJ clearly accepted that there would be some pain symptoms from Mr. Price's condition, but did not accept the full extent of the symptoms to which he testified.  The ALJ did not accept, in other words, Mr. Price's factual assertion that his symptoms were so severe that there was no work he could take on as employment.  This was not an application of an incorrect legal standard.

      Mr. Price also contends the other reasons offered for discrediting plaintiff's testimony fail to rise to the level of clear and convincing.  The ALJ offered three such reasons.  First, he noted that while plaintiff testified of radiating pain into his left leg, Dr. Morrell found no radicular pain. (*Id*. at 17-18, 190.)  He further noted Mr. Price told Dr. Morrell that conservative treatments (physical therapy, acupuncture, chiropractic treatments) had been beneficial.  Finally, the ALJ noted the improvements from chiropractic care were also documented by Mr. Price's chiropractic physician, Dr. Gorman.  (*Id*. at 17.)

      Mr. Price's response to the discrepancy on radiculopathy is his explanation, given at the hearing, that he may not have understood the question, or that Dr. Morrell may not have understood his answer.  He also notes that he reported radicular symptoms to his acupuncture therapist.  (*Id*. at 150.)  But his testimony at the hearing does not render the ALJ's reliance on the discrepancy anything less than clear and convincing.  And the acupuncturist's record is a checked

PAGE 10 - OPINION AND ORDER

box for whether the pain radiates, to which Mr. Price first checked "no" and then checked "yes, sometimes." While the evidence does not compel only one conclusion, the ALJ's determination that the discrepancy should affect Mr. Price's credibility was based on clear and convincing reasons supported by substantial evidence.

Similarly, the ALJ noted plaintiff had not sought or received medical treatment for some time. Plaintiff contends this violates the principle set out in *Gamble v. Chater*, 68 F.3d 319, 322-23 (9th Cir. 1995) and *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) that the inability of a claimant to afford the cost of treatment is not a valid reason for finding the person not disabled. But the ALJ's point went deeper than that. He noted "the claimant lacks the resources to obtain regular medical treatment," but pointed out that "the record shows no evidence of *any* medical treatment subsequent to the chiropractic treatment he received on November 17, 2003." (Admin. R. 18.) (emphasis added). Not only had no aggressive medical management been pursued; none had even been recommended. (*Id*.) Thus, the lack of any medical treatment for a lengthy period of time was not based merely on plaintiff's lack of funds. Further, it was a clear and convincing reason supported by substantial evidence in the record on which the ALJ could rely in discounting plaintiff's credibility.

Finally, the ALJ relied on plaintiff's testimony of his activity level as inconsistent with his pain symptoms. Plaintiff contends the ALJ's reasoning is inconsistent with *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998). In *Reddick*, the Ninth Circuit explained that "[o]nly if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Id*. at 722. The problem for plaintiff is that his claimed limitation was quite severe; he was essentially alleging that he was almost entirely incapacitated.

PAGE 11 - OPINION AND ORDER

He has the argument backwards when he alleges his described activities are inconsistent with his ability to return to his full time job as a car salesperson. (Pl. Reply Br. at 5.) The ALJ did not look to Mr. Price's own descriptions of his activities to determine whether he could work as a car salesperson; he looked at them to determine whether they matched his claimed limitations, in order to assess credibility. And after a fair review of what Mr. Price says he does, the ALJ properly concluded that "[h]is activity is inconsistent with the asserted level of incapacity." (Admin. R. 18.)

In sum, the ALJ relied on clear and convincing reasons, supported by substantial evidence in the record, for discrediting somewhat Mr. Price's own statement of his symptoms and limitations.

**E.  Inconsistencies with the DOT**

Mr. Price contends the RFC and the resulting vocational expert ("VE") testimony are inconsistent with the DOT.

The first issue involves reaching. The DOT classifies the occupation of car salesperson as requiring "frequent" reaching. Both Dr. Eder and Dr. Habjan stated plaintiff could only reach "occasionally" at or above shoulder level. Dr. Morrell opined that plaintiff has a "decreased ability to reach objects." The RFC incorporates these as a limitation of "occasional" reaching above shoulder level.

The second issue involves being able to change positions. Mr. Price contends the VE testimony that he could work as a car salesman was also inconsistent with the DOT for that job, and there was no evidence to support this discrepancy. That is, the ALJ failed to affirmatively inquire of the VE whether his findings comport with the DOT.

PAGE 12 - OPINION AND ORDER

The crux of the issue here centers on the limitation in the RFC that Mr. Price should be able to "sit or stand and walk for up to six hours each in an eight hour day *with position changes at will, and the ability to get off his feet at will*." (Admin. R. 16.) (emphasis added).  The DOT's narrative description, on the other hand, says the salesperson "[e]xplains features and demonstrates operation of car in showroom or on road." *Dictionary of Occupational Titles 273.353-010*, 1991 WL 672465.

As Mr. Price correctly points out, it is reversible error for the ALJ to fail to ask the VE if the testimony conflicts with the DOT.  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  The Commissioner concedes this error, but contends it is harmless because the ALJ's findings do comport with the DOT description.  That is, the Commissioner argues that it is entirely possible to change positions at will, or get off one's feet at will, while explaining the features of a car and demonstrating its operation in the showroom or on the road.

Mr. Price protests that this is an argument nowhere advanced by the ALJ.  But this is necessarily true of most harmless error arguments.  More importantly, in my view the Commissioner's assertion is simply unpersuasive.  It is not readily obvious that the VE testimony, or the RFC, are in fact consistent with the DOT.  Without further explanation, there is an inconsistency between the need to change positions and get off one's feet at will, and the DOT description of a car salesperson.

In two ways, therefore, the record shows some inconsistency with the DOT.  In my view, neither discrepancy is harmless error.

PAGE 13 - OPINION AND ORDER

**CONCLUSION**

At various points, Mr. Price contends that any error in this case requires a remand for immediate benefits.  In the alternative, he requests a remand with instructions for the ALJ to proceed with step 5.  This case is not appropriate for an immediate award of benefits.  The critical error at step 4 involved not inquiring of the VE about the DOT.  The case is remanded for the ALJ to properly consider the testimony of Ms. Ryckenbush, and to take into account the discrepancies between the RFC and the DOT.  If, as appears likely, this eliminates Mr. Price's ability to return to work as a car salesperson, the ALJ is directed to proceed to step 5.

DATED this  25th  day of April, 2008.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 14 - OPINION AND ORDER